UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CAROL A. LAVERDURE, | ) | CASE NO. C05-1776-RSL-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY |
| JO ANNE B. BARNHART, Commissioner of Social Security | ) | DISABILITY APPEAL |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Carol A. Laverdure proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DI") under Title II of the Social Security Act ("SSA") after a hearing before an Administrative Law Judge ("ALJ").

Having considered the ALJ's decision, the administrative record ("AR"), and all memoranda of record, it is recommended that this matter be REMANDED for an award of benefits.

/ / /

/ / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1951.[1] She has a high school education with past work experience as a pan operator/candy maker, mattress cutter/seamstress, cashier, and file clerk. (AR 16, 120). On December 11, 2002, plaintiff filed an application for DI, alleging a disability onset date of May 22, 1998, due to a herniated disk, severe low back and right leg pain, and depression.[2] (AR 59). Her application was denied initially and on reconsideration, and she timely requested a hearing.

On January 11, 2005, ALJ Arthur Joyner held a hearing and heard testimony from plaintiff, medical expert Manny Karbelnig, M.D., and vocational expert Bill Weiss. (AR 246-78). On March 21, 2005, the ALJ issued a written decision denying plaintiff's application for DI benefits. (AR 15-21). Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review plaintiff's claim. (AR 5-9). Plaintiff appealed this final decision of the Commissioner to this Court.

## II. JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## III. DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

[2] Plaintiff was insured for disability benefits under the Social Security Act through December 31, 1999, therefore, plaintiff must establish disability on or prior to this date. (AR 16).

01 | be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

02 | engaged in substantial gainful activity since her alleged disability onset date.  (AR 20).  At step

03 | two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found

04 | that plaintiff has the following severe impairments: degenerative disc disease status post lumbar

05 | surgery and obesity.  (AR 21).  At step three, it must be determined whether a claimant's

06 | impairment(s) meets or equals a listed impairment.  The ALJ found that plaintiff's impairments do

07 | not meet or equal a listed impairment.  (AR 21).  If a claimant's impairments do not meet or equal

08 | a listing, at step four the Commissioner must assess residual functional capacity ("RFC") and

09 | determine whether the claimant has demonstrated an inability to perform past relevant work.  The

10 | ALJ found that plaintiff has the RFC to perform her past relevant work as a seamstress.  (AR 21).

11 | Thus, the ALJ concluded that plaintiff is not disabled as defined in the Social Security Act.  (AR

12 | 21).

13 |      This Court's review of the ALJ's decision is limited to whether the decision is in

14 | accordance with the law and whether his findings are supported by substantial evidence in the

15 | record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence

16 | means more than a scintilla, but less than a preponderance; it means such relevant evidence as a

17 | reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

18 | F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

19 | supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d

20 | 947, 954 (9th Cir. 2002). The reviewing court may not reweigh the evidence in the record, nor

21 | try the issues *de novo*, nor substitute its judgment for that of the Commissioner.  *Brown v. Apfel*,

22 | 192 F.3d 492, 496 (5th Cir. 1999).

01  In assigning error to the Commissioner's decision denying benefits, plaintiff argues that the

02  ALJ failed to provide specific and legitimate reasons for rejecting the opinions of treating physician

03  Keith Criddle, M.D., and testifying medical expert Manny Karbelnig, M.D., that plaintiff's

04  impairments meet or equal listing 1.04 before December 31, 1999, her date last insured.  Plaintiff

05  asserts that the medical opinions that plaintiff's impairments meet or equal listing 1.04 are

06  supported by the objective medical record.  Plaintiff also argues that the ALJ erred in assessing

07  her credibility and RFC.  The Commissioner agrees that the ALJ erred in evaluating the medical

08  expert's testimony, but maintains that the decision requires remand for further proceedings.  The

09  Commissioner asserts that, upon remand, the ALJ should reevaluate the medical evidence as a

10  whole; reevaluate whether plaintiff's impairments meet or equal a listed impairment; reevaluate

11  plaintiff's RFC; and, if necessary, continue with steps four and five of the sequential evaluation.

12  The Court has discretion to remand for further proceedings or to award benefits.  *See*

13  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits

14  where "the record has been fully developed and further administrative proceedings would serve

15  no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

16  Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
    reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that
17  must be resolved before a determination of disability can be made; and (3) it is clear
    from the record that the ALJ would be required to find the claimant disabled if he
18  considered the claimant's evidence.

19  *Id.* at 1076-77.  For the reasons described below, the undersigned concludes that this matter

20  should be remanded for an award of benefits.

21  A. <u>Step Three Finding</u>

22  At step three, the ALJ must consider whether the claimant's impairments meet or equal

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01 one of the impairments in the Listing of Impairments set forth in Appendix 1 to 20 C.F.R. Part

02 404, Subpart P.  Plaintiff bears the burden of establishing that she has an impairment that meets

03 or equals a listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  Here, the ALJ found

04 that plaintiff's degenerative disc disease and obesity did not meet or equal a listing as of December

05 31, 1999, her date last insured.  (AR 21).

06 Plaintiff contends that the ALJ erred in rejecting the opinions of her treating physician

07 Keith Criddle, M.D., and the testifying medical expert Manny Karbelnig, M.D., that plaintiff's

08 impairments meet or equal listing 1.04 before December 31, 1999.  Plaintiff asserts that the

09 medical evidence of record, including the opinions from treating and non-treating physicians as

10 well as the objective medical findings, overwhelmingly demonstrate that she meets or equals

11 Listing 1.04. Listing 1.04, governing disorders of the spine, requires as follows:

12 1.04 Disorders of the Spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral

13 fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

14

15 A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is

16 involvement with the lower back, positive straight leg raising test (sitting and supine);

17 OR

18 B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning

19 or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

20

21 OR

22 C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01   and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

02   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A)-(C).  Thus, to satisfy the requirements of Listing

03   1.04, the claimant must have: (1) a disorder of the spine, resulting in compromise of a nerve root

04   or the spinal cord; and (2) symptoms that meet Subpart A, B, or C.

05        1.   <u>Manny Karbelnig, M.D.</u>

06        At the hearing, medical expert Dr. Karbelnig testified that plaintiff's degenerative disc

07   disease met the requirements for Listing 1.04(A) before and after her date last insured.  Dr.

08   Karbelnig was asked whether plaintiff's impairments met of equaled Listing 1.04 before December

09   1999:

> ATTY: . . . Doctor, do you have an opinion as to whether or not Ms. Laverdure's condition prior to December of 1999 met or equaled the disability described in listing 1.04?
>
> ME: 1.04, probably yes. . . . I would say that she met 1.04, but I'm questioning whether at that time she met 1.04(a). . . .
>
> ATTY: And so you're – let me make sure the record is clear, Doctor.  Your opinion is that in reviewing listing 1.04(a) you would agree that Ms. Laverdure's findings met or equaled that described in the listing.
>
> ME: Yes, sir.  And, again, based on the file that I've reviewed, yes.

(AR 266-67).  The ALJ then clarified:

> ALJ: How long would she have met the listing?
>
> ME: How long would she have met the listing?  Well, certainly, from the record I have she was improved after the surgery but only for a few months.  So the surgery was in June of '98 and by September of '98 the record indicates she was beginning to have some symptoms, which would largely meet 1.04.

(AR 267).  Dr. Karbelnig was then asked whether plaintiff's impairments met or equaled Listing

1.04 after December 1999:

> Q ... And I'd like to now address the period following December 1999 and, again, the question of whether Ms. Laverdure's condition continued to meet or equal what is described in listing 1.04(a).
>
> A Yes, sir, in the record that I reviewed, including the record I reviewed last Sunday in preparation for this hearing and the records which I just received in view of the stuff that came in by fax, I would say that in all reasonable medical certainty – I'm using medical terminology – reasonably medical certainty the symptoms would have continued in that time interval as you've mentioned.
>
> Q And so, again, just so the record is clear, is it your opinion, then, on a reasonable medical certainty basis that after December 1999 the medical records establish that Ms. Laverdure's condition continued to meet or equal the disability described in listing 1.04(a).
>
> A 1.04, I felt, yes. But whether it applied to (a) or not because of the progressive nature of the file that I reviewed, I don't know exactly when she would meet (a), but she most certainly would have met, according to the record, 1.04.

(AR 268-69). Plaintiff's counsel then went over the objective medical findings in the record which demonstrated the specific findings required of listing 1.04(A), including evidence of nerve root compression, motor loss, muscle weakness, and reflex loss. (AR 270-74). Plaintiff's counsel then asked again:

> Q Okay, and those are things – that are findings, again, consistent with listing 1.04(a)?
>
> A Yes, sir. Yes, sir. They are. I mentioned before in discussion I think with the Judge was that there was a progression of symptoms – a progression of her condition over a period of time so that, although the surgery was in '98, by the year 2000 she was already exhibiting definite 1.04 findings – 1.04(a) findings.
>
> Q And isn't it true, Doctor, that she was exhibiting those findings throughout 1999 and into 2000 and onward?
>
> A From what you've pointed out to me, sir, that's true.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

> Q So you would agree, then, Doctor, that even after December of 1999 the medical records establish findings consistent with those described in listing 1.04(a)?
>
> A It would.

(AR 274).

The ALJ, however, rejected Dr. Karbelnig's opinion and concluded that his testimony indicated that the listing was not met prior to the date last insured. (AR 17, 19). Specifically, the ALJ stated:

> The medical expert testified that the claimant's current condition might meet or equal the severity of the listings. However, that testimony does not relate back to the period on or before December 31, 2000. And, therefore, will not be given significant weight.

(AR 17).

> The medical expert testified that the claimant has recurrent disk [sic] symptoms since September 1998. He noted that the claimant had increasing symptomology. In 1999 she was able to go to school which is similar to light work. He felt that the claimant's impairment probably met the requirements of the listings after her date last insured. He did note that the claimant had evidence of loss of reflexes and strength in the right leg, but did not feel that the listing was met prior to the date last insured.
>
> The medical evidence indicates that the claimant has degenerative disc disease status post lumbar surgery and obesity, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. I concur with the medical expert that listing 1.04 has not been met. . . .
>
> The evidence shows that the claimant did not have a positive straight leg raising test during the period in question. The test was performed on several occasions and was never positive. Therefore, the listing was not met. Additionally, the limitation of motion in the spine was not significant at the time.

(AR 19).

The Commissioner concedes that the ALJ erred in evaluating the medical expert's

testimony, but argues that there are unresolved issues. (Dkt. #17 at 7). The Commissioner suggests that the record is "ambiguous or conflicting" because Dr. Karbelnig testified that plaintiff met Listing 1.04 during the relevant time period, but then stated, "prior to the date last insured, Plaintiff could have performed light work." *Id.* The Commissioner argues that "[t]his testimony is mutually exclusive and must be clarified" on remand. (Dkt. #17 at 7). Plaintiff responds that "[h]ad the ALJ performed the sequential evaluation in the proper order, the ability to do light work would not have been at issue because step three would have been the end of the sequential process with a finding of disabled as meeting listing 1.04." (Dkt. #18 at 3).

The Court agrees that the ALJ erred in evaluating the medical expert's testimony. As the Commissioner concedes, it is evident from the hearing transcript that Dr. Karbelnig testified that plaintiff met or equaled listing 1.04(A) before and after December 31, 1999. (AR 274). Thus, the ALJ's statement that Dr. Karbelnig "felt that the claimant's impairment probably met the requirement of the listings <u>after</u> her date last insured" is contrary to the testimony provided. (AR 19). Furthermore, the Court does not find that the record is ambiguous or conflicting because Dr. Karbelnig testified that plaintiff met listing 1.04 and that plaintiff could have performed light work during the relevant time period. In making the step three determination, the ALJ considers only whether the alleged impairment is included in the listings of impairments and meets the duration requirement. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant satisfies the test, the claimant will be found disabled at step three without further inquiry. *Id.* If the claimant does not satisfy the test, the ALJ then proceeds to step four to determine whether, after considering all impairments in combination and determining the claimant's RFC, the claimant can still perform past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The ability to perform light work

01 would not be at issue because a finding that plaintiff's impairments meet or equal a listed

02 impairment would have been the end of the sequential evaluation process with a finding of disabled

03 at step three.

04     2. <u>Keith Criddle, M.D.</u>

05     On December 13, 2004, plaintiff's long-time treating physician, Keith Criddle, M.D.,

06 opined that plaintiff is disabled due to chronic back pain with radicular neurological symptoms.

07 Specifically, Dr. Criddle stated:

> Following the surgery, and ever since, Ms. Laverdure has suffered from significant and chronic back pain that radiates into both legs, atrophy, numbness, and altered gate due to loss of motor control. I believe that since her June 22, 1998 surgery Ms. Laverdure has been disabled and unable to work in any gainful occupation. She has made several very short-lived, unsuccessful return to work attempts, but has never regained her ability to do any substantial work.

12 (AR 155). Dr. Criddle asserted that plaintiff's impairments meet listing 1.04(A) in that "she has

13 a disorder of the spine that has resulting nerve root compromise evidenced by neuro-anatomic

14 distribution of pain, limitation of motion of the spine, motor loss with muscle weakness, and

15 sensory or reflex loss, and positive straight leg raising." (AR 155).

16     Plaintiff argues that the ALJ gave no reason for failing to comment on Dr. Criddle's

17 opinion that plaintiff's impairments met or equaled listing 1.04(A). Plaintiff contends that the ALJ

18 cannot disregard the opinion of a treating physician without providing specific and legitimate

19 reasons for doing so. Plaintiff asserts that "Dr. Criddle's opinion *must* be adopted, especially in

20 light of the supportive and consistent testimony of Dr. Karbelnig." (Dkt. #14 at 3). The

21 Commissioner argues that the issue of whether a claimant is disabled or meets a particular listing

22 is reserved to the ALJ. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

01        The medical opinion of a treating physician is entitled to special weight because "he is
02 employed to cure and has a greater opportunity to know and observe the patient as an individual."
03 *Magallanes*, 881 F.2d at 751.  However, the treating physician's opinion is not necessarily
04 conclusive as to either a physical condition or the ultimate issue of disability.  *Id.*  The ALJ may
05 reject the uncontroverted opinion of a treating physician, but only by setting forth clear and
06 convincing reasons for doing so.  *Id.*  Here, the ALJ simply ignored Dr. Criddle's opinion that
07 plaintiff's impairments met or equaled listing 1.04(A).

08        3. <u>Crediting Physician's Opinions as True</u>

09        "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of
10 a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,
11 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,
12 plaintiff's condition met a listing)(quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.
13 1989)).  Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,
14 the evidence supports a finding of disability.  *See*, *e.g.*, *Schneider v. Commissioner of Social Sec.*
15 *Admin.,* 223 F.3d 968, 976 (9th Cir. 2000)("When the lay evidence that the ALJ rejected is given
16 the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]
17 functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's
18 reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony
19 legally insufficient; finding record fully developed and disability finding clearly required).

20        However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*
21 *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there
22 were insufficient findings as to whether plaintiff's testimony should be credited as true).  As stated

01 by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon
02 an undeserving, able claimant." *Barbato v. Commissioner of SSA*, 923 F. Supp. 1273, 1278 (C.D.
03 Cal. 1996) (remanding for further proceedings where the ALJ made a good faith error, in that
04 some of his stated reasons for rejecting a physician's opinion were legally insufficient).

05      Plaintiff argues that the opinions of Drs. Karbelnig and Criddle, as supported by the
06 objective findings in the record, must be credited as a matter of law as to the ultimate issue of
07 disability.  The Commissioner concedes that the ALJ failed to proffer sufficient reasons for
08 rejecting the opinions of Drs. Karbelnig and Criddle, but argues that this matter should be
09 remanded for further proceedings.  For the reasons described above, the Commissioner fails to
10 support her contention that the ALJ should reassess these opinions on remand.  In this case, the
11 opinions of Drs. Karbelnig and Criddle are well supported by multiple objective medical findings
12 throughout the record, including:

| | |
|---|---|
| May 28, 1998 | finding of positive straight leg raising (AR 220), |
| June 2, 1998 | finding of muscle weakness in the right EHL and loss of ankle reflex (AR 197), |
| June 9, 1998 | MRI showing severe canal stenosis and bilateral disc protrusion causing neural foraminal encroachment (AR 229), |
| July 22, 1998 | finding of decreased range of motion, muscle weakness, and right foot drop (AR 137), |
| September 10, 1998 | finding of decreased range of motion of the back with residual neuropathy (AR 136), |

| | | |
|---|---|---|
| 01 | May 25, 1999 | finding of reflex loss and strength of right leg (AR 232), |
| 02 | June 22, 1999 | finding of muscle weakness of the right EHL (AR 234), |
| 03 | June 7, 2000 | finding of muscle weakness of the right EHL, decreased Achilles reflex on the right (AR 226), |
| 05 | May 1, 2002 | finding of marked decrease range of motion and positive leg raise bilaterally (AR 130), |
| 07 | June 3, 2002 | MRI showing herniated disc impacting the nerve root (AR 141). |

In light of the evidence in the record as a whole, the Court concludes that (1) the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Karbelnig and Criddle, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find plaintiff disabled if the opinions of Drs. Karbelnig and Criddle were taken as true. Indeed, there is no contrary medical opinion, and thus no substantial evidence, that supports the ALJ's determination that listing 1.04(A) is not met. Furthermore, the medical records evidence supports the conclusion that plaintiff's impairments equaled the requirements of Listing 1.04(A).[3]

## IV. CONCLUSION

For the foregoing reasons, I recommend that the final decision of the Commissioner be reversed and remanded for an award of benefits. A proposed Order accompanies this Report and

---

[3] Because the Court concludes that the record supports termination of the sequential evaluation process at step three, the Court need not address plaintiff's arguments that the ALJ erred in assessing her credibility and RFC at step four.

01  Recommendation.

02       DATED this 30th day of June, 2006.

                                    /s/ Mary Alice Theiler
                                    Mary Alice Theiler
                                    United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14